O’Neall, J.
In the case of Samuel W. Miller, legatee of S. Miller v. The Executor and Executrix of Samuel Miller and others, the decretal order was made out of which this application arises. In that case it was adjudged in the construction of the will of the petitioner’s testator, that the estate for life by it devised to the widow, then the wife of the petitioner, did not commence until Job P. Miller, a son of the testator, attained to the age of twenty-one years. Before that event, in U99, as appears by the same decree, the petitioner built the house on the unimproved lot devised* to the widow of the testator for her life. The petitioner r-#9. „ was the executor of the testator’s will, and at the time he erected *- the house, was the husband of the widow, und therefore tenant per auter vie in expectancy. There seems to be no doubt that he acted with an intention to beuefit the estate; and at the same time not to prejudice himself by building without a chance of reimbursement. He was advised by the Ordinary of Charleston District in 1198, to erect the building, “as it will greatly conduce to the benefit of the estate,” and if, upon the death of the tenant for life, “the executor should not be fully reimbursed for the expenses of the said building-, the Court of Equity will compel the children to bear their proportion of the buildings so descending.” I have thus stated such additional facts as did not appear in the decree upon the petition, and which may be material. It seems to me that there is no well founded objection to the proceeding by petition. The point now made was reserved in the former decree, and leave given to the petitioner to make application as he has done. The proceedings which may be had on the petition will be in the case of Miller v. The Executor of Miller, deceased. That some of the party to that suit is dead, is no objection, if their representatives be made parties to this petition, as appears to be done.
After divesting the case of these preliminary objections, it will be necessary to examine the right of the petitioner to be reimbursed for the house and other buuildings erected by him on the vacant lot, which, by his testator’s will, after Job P. Miller became fully of age, was devised to the testator’s widow, late the wife of the petitioner.
I agree with the Chancellor, that the former decree does not conclude the respondents from objecting to any allowance being made to the petitioner on that account': it is true that it would seem that the Chancellor thought, when he drew the former decretal order, that the petitioner was entitled to compensation ; but still there was no adjudication that he was so entitled. It was a mere reservation of the question until the life estate fell in, “ and then all parties, (says the decree) are to be at liberty to apply by petition to this Court to adjust the mode of settlement or compensation between Mr. Palmer, as owner of the house, and the owners of the lot.” There is nothing in this direction which can operate *170 to estop the parties from now making the question, whether the petitioner is entitled to be paid for his improvements ? For, at the most, it cannot w-i have any effect beyond a mere interlocutory order; it does *not ¿ 1 end the controversy between the parties, and hence is not a final decree, which could alone estop the parties from the question. It seems however to me that the opinion of the Chancellor, which he seems to have entertained in his former decree, was right, and that his present conclusion has resulted from not having the facts of the case so fully before him as they were when he pronounced his original decree. I agree that generally a tenant for life is not to be paid for improvements; but to that rule there may be exceptions, as is manifestly the ease -where a tenant for life goes on and finishes buildings left by the testator in an unfinished state. Hibbert v. Cook, 1 Sim. & St. 552. The reasons of that exception may be useful to us here. They certainly are two-fold, first, that it is beneficial to the remainder; and second, the implied intention of the testator from the state of the property, its unfinished condition, that it should be finished out of his estate in order to render it useful to both the tenant for life and the remainder-men. In the case before us both of these reasons apply directly: it is alleged that the improvement -was a beneficial one to ah concerned; and it is manifest that the lot was most probably useless to the tenant for life unless it was improved. We should, therefore, perhaps, (were it necessary to do so,) be authorized to presume that the testator’s intention was that the lot should be improved, as well for the use of the tenant for life as of the remainder-men.
But it is not necessary to resort to the doctrine between tenants for life and in remainder, in order to decide the question. For the house and other improvements were made in 1199, six years before the petitioner’s wife’s life estate commenced; he built as executor and under the advice of the ordinary. In Inwood v. Twyne, 2 Ed. 152, Lord Chancellor Northington stated the rule which always governs this Court in passing upon the acts of trustees. He said, “I can conceive many cases wliere a conversion of such estate (personal into real) might be made by trustees or guardians, and that this Court wrould support and approve their conduct ; and it would be strange to say that trustees w'ould be censured in this Court for doing what the Court would have ordered to have been done.”
Under this rule the question is, were the improvements such as the Court would have authorized the executor to make ? This would have *91 oq depended upon the fact w'hether it would have been ^beneficial to -* all concerned as devisees. ' On looking back to Mr. Miller’s will, I perceive that he has directed all his estate, real and personal, (after payment of his debts,) to be kept together for the joint use and maintenance of his wife and children until his son, Job, arrived at the age of twenty-one years. This, I think, constituted a strong reason for the improvement of the lot: while vacant it would be unproductive capital; when improved its rents or use might contribute to the purposes of the trust, for the widow and children. But the fact that it might have been such an improvement as the Court would have ordered, is a ground to retain the petition, and to submit the question to the examination of the Commissioner. In Myers v. Myers, 2 M’C. C. R. 265, the defendant, an *171 executor, was allowed for improvements on the trust estate, on the ground that it was for the benefit of the cestui que trusts. The petitioner it seems to me is entitled tó the benefit of the same rule. He made the improvements as executor, and if they were such as were beneficial to the estate, and such as a prudent man, the owner of such an estate as Mr. Miller’s, would be willing to make, then the petitioner is entitled to compensation.
But he is not entitled to more than the present value of the improvements, to be ascertained by the enhanced value which the said improvements have given to the lot. If the income from the house and lot 'from its erection (as the former decree allowed Mr. Palmer to retain the whole without an account,) should on the reference appear to have been more than the interest on the sum of money expended by Mr. Palmer, in making improvements and the costs of necessary repairs, then such excess will be deducted from the present value of the improvements.
It is ordered and decreed that Chancellor De Saussure’s decree, sustaining the demurrer to this petition, be reversed, and that it be referred to the Commissioner to ascertain and report whether the said improvements were beneficial to and proper for the estate; and if so, then the amount to which the petitioner is entitled on account of the said improvements, on the principles and according to the directions contained in this opinion.
Johnson, J., and Harper, J., concurred.